UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| **JOHN ALEXANDER** | * | **CIVIL ACTION** |
| **VERSUS** | * | **NO. 04-3326** |
| **BROADMOOR LLC, ET AL.** | * | **SECTION "B"(3)** |

## ORDER AND REASONS

Before the Court is Defendant's Motion for Summary Judgment (Rec. Doc. No. 46). For the following reasons, the motion is hereby **GRANTED**.[1]

## BACKGROUND

On May 2, 2003, Plaintiff, John Alexander, tripped and sustained injuries when debris in the form of a strap wrapped around his ankle while unloading duct and transporting it on the property of Defendant, J.Ray McDermott, Inc. ("McDermott" or "Defendant"). Plaintiff was an employee of Waynco Sheet Metal, Inc. ("Waynco"). Broadmoor, L.L.C. ("Broadmoor") contracted with Air Comfort, Inc. ("Air Comfort") to install an HVAC system in the offshore living module on McDermott's property.

---

[1] We are grateful for the work on this case by Beth Bernstein, a Tulane Law School extern with our Chambers.

1

Plaintiff brought suit against Broadmoor, McDermott, BP Exploration and Production ("BP")[2], and Boh Bros. Construction Co., L.L.C.[3] On December 6, 2004, the instant action was transferred to this Court from the Eastern District of Texas. (Rec. Doc. No. 1). McDermott, the remaining defendant, filed the instant motion for summary judgment on June 14, 2006 (Rec. Doc. No. 46) under Federal Rule of Civil Procedure 56.

**LAW AND ANALYSIS**

**A. Summary Judgment Standard**

Summary judgment is proper if the pleadings, depositions, interrogatory answers and admissions, together with any affidavits, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56©). See also Celotex Corp. v. Catrett, 477 U.S. 317, 327, 106 S. Ct. 2548, 2554-55 (1986). A genuine issue exists if the evidence would allow a reasonable jury to return a verdict for the non-movant. Anderson v. Liberty

---

[2] On March 21, 2006, the Court granted summary judgment in favor of Broadmoor pursuant to the language in the contract between Broadmoor and Air Comfort under tort immunity and the two-contract theory. (Rec. Doc. No. 34).
[3] Suit against Boh Bros. was terminated in May 2005 pursuant to a voluntary stipulation with Plaintiff. (Rec. Doc. No. 14).

2

Lobby, Inc., 477 U.S. 242, 248, 106 S. Ct. 2505, 2510 (1986). The Court must consider the evidence with all reasonable inferences in the light most favorable to the non-moving party; the non-movant must produce specific facts to demonstrate that a genuine issue exists for trial. Webb v. Cardiothoracic Surgery Associates of North Texas, 139 F.3d 532, 536 (5th Cir. 1998). The non-movant must go beyond the pleadings and use affidavits, depositions, interrogatory responses, admissions, or other evidence to establish a genuine issue. Id. Accordingly, conclusory rebuttals of the pleadings are insufficient to avoid summary judgment. Travelers Ins. Co. v. Liljeberg Enter., Inc., 7 F.3d 1203, 1207 (5th Cir. 1993).

**B. Liability Due to Negligence**

The Court must first consider whether Defendant was responsible for Plaintiff's injuries based upon the Principal – Independent Contractor relationship that Defendant had with Plaintiff's employer, who was responsible for the maintenance of safe working conditions.

"A principal is not liable for the actions of its independent contractor unless (1) the liability arises from ultrahazardous activities performed by the contractor on behalf of the principal or (2) the principal retained 'operational control' over the contractor's work or expressly or impliedly

approved its unsafe work practice that led to an injury." <u>Klein v. Cisco-Eagle, Inc.</u>, 855 So.2d 844, 850.

1.  <u>Ultrahazardous Activity</u>

First, the court must examine whether the activity in which Plaintiff was engaging was ultrahazardous.  Ultrahazardous activities present "a risk of harm that cannot be eliminated through the exercise of due care."  <u>O'Neal v. Int'l Paper Co.</u>, 715 F.2d 199, 202.  In <u>Perkins v. F.I.E. Corp.</u>, the court "discussed the Louisiana doctrine to be defined by three boundaries: (1) the activity must relate to land or some other immovable; (2) the activity itself must cause the injury, and the defendant must be engaged directly in the injury-producing activity; and (3) the activity must not require substandard conduct to case injury."  <u>Ainsworth</u>, 829 F.2d at 550 (citing <u>Perkins v. F.I.E. Corp.</u>, 762 F.2d 1250, 1267-68 (5th Cir.1985)).  Examples of ultrahazardous activity are seen in <u>Hampton v. Rubicon Chemicals, Inc.</u> 458 So.2d 1260 (La.1984) (storage of poisonous gas), <u>Price v. State</u>, 451 So.2d 644 (La.Ct.App.1984)(blasting), <u>Rosenblath v. Louisiana Bank & Trust Co.</u>, 432 So.2d 285 (La.Ct.App.1983)(demolition activities), <u>Russell v. Windsor Properties, Inc.</u>, 366 So.2d 219 (La.Ct.App.1978)(aerial spraying), and <u>D'Albora v. Tulane Univ.</u>, 278 So.2d 504 (La.1973) (pile driving).

The facts of this case make an extremely clear showing that Plaintiff's work was not ultrahazardous.  The injury occurred when unloading a truck.  The minimal amount of risk involved in that activity could have been eliminated through the exercise of due care.

2. <u>Operational Control</u>

The next issue is whether Defendant exercised operational control over the area in which Plaintiff sustained his injuries. "Operational control exists only if the principal has direct supervision over the step-by-step process of accomplishing the work such that the contractor is not entirely free to do the work in his own way."  <u>Klein</u>, 855 So.2d 850.

"Testing for this operational control exception first requires an examination of whether and to what extent the right to control work has been contractually reserved by the principle."  <u>Coulter v. Texaco, Inc.</u>, 117 F.3d 909, 912.  The contract between Defendant and BP states "The purpose of this yard utilization agreement ... is for BP and [Defendant] to memorialize the Commercial Agreement concluded between the parties to fabricate the BP Program Scope and Work thereunder. [Defendant] agrees to dedicate and BP agrees to utilize the Dedicated Resources of [Defendant's] Amelia, Louisiana, Fabrication Yard on a continuous and exclusive basis for an

5

indefinite period of time known as the Exclusive Period to fabricate the BP Program Scope and Work thereunder." (Defendant's Exhibit 1).  No where in the contract does Defendant reserve the right to direct any part of the work performed by sub-contractors on its property.  Additionally, the contract between Broadmoor and Air Comfort specifically states that Air Comfort is delegated the duty of clean-up and maintaining safe working conditions. Specifically, the contract states "Subcontractor (Air Comfort) shall daily clean up debris resulting from its work.  Debris will be disposed of in the job site dumpster provided by the Contractor (Broadmoor)." (Rec. Doc. No. 46 at Ex. "5").  Additionally, the contract states "Housekeeping is the responsibility of each subcontractor (Air Comfort).  Good housekeeping is an important factor in safety on the job.  It helps to reduce accidents and increase efficiency and job morale" and "All hallways and walkways shall be kept clear of trash, materials, electrical cords and lines to prevent trip hazards."  Id.  Therefore, the Court finds that Defendant did not contractually reserve the right to control the work site or maintain safe working conditions.

In Coulter, the court held that because the principal in the contract delegated the responsibility of performance and details of work to a subcontractor, the principal was not liable for

Plaintiff's injuries that occurred due to the subcontractor's failure to maintain the work area.  117 F.3d at 913.  Similarly, in Klein, "control and supervision of the work site was expressly assumed by [the subcontractor] in the construction contract … in addition, … the construction contract specifically imposed all safety-related responsibilities on the contractor."  Klein, 855 So.2d at 850.  The court in Klein therefore held that the principle was not responsible for Plaintiff's injuries on the job site.  Id. at 851.  Thus, under the present circumstances, given the nature of both the contracts between Defendant and BP and Broadmoor and Air Comfort, the Defendant cannot be said to have reserved contractually any right to control the subcontractor's work.

    Plaintiff argues that the presence of Defendant's employees, specifically a welder, the welder's supervisor, and a safety inspector on the work site demonstrates Defendant's control over the premises.  However, Defendant's employees were not present at the time of injury.  Courts have held that "the physical presence of a representative of a principal is not sufficient to show supervision or control."  Fruge ex rel. Fruge v. Parker Drilling Co., 337 F.3d 558, 564.  In Fruge, the principal "provided on-site supervision 24-hours per day, via various independent contractors whose employees reported to [the principal's] staff

7

engineers on a daily basis." Id. The court held that this was not sufficient to show control because "absent an express or implied order to the contractor to engage in an unsafe work practice leading to an injury, a principal … cannot be liable under the operational control exception." Coulter, 117 F.3d at 912. Also, in Ainsworth v. Shell Offshore Inc., the court held that having the principal's "company man" on the job site is not sufficient to demonstrate the principal's control of the project. 829 F.2d 548, 550. Defendant in this case had employees on the job site with far less power than either of the principals' representatives in Coulter and Ainsworth. In fact, according to the Plaintiff's deposition, the welder simply welded whatever Plaintiff told him to, and that was checked by the welder's supervisor. (Rec. Doc. No. 46, Ex. "7" 60-61). Thus, this minimal activity by Defendant's representatives is not enough to make a demonstration of Defendant's control over the work space.

"Under Louisiana law, a principal generally is not liable for the offenses an independent contractor commits in the course of performing his contractual duties." Ainsworth, 829 F.2d at 549. The two exceptions are when the work is ultra hazardous or when the principal retains operation control over the job site. Id. at 550. Defendant does not fall under either exception. The work was not ultrahazardous, nor did Defendant retain any right

to control the work space contractually, or maintain agents or representatives on the work site to control activity. Therefore, the court finds that Defendant did not exercise control over the work site and cannot be held liable for the offenses of his independent contractors.

**C. Care, Custody, or Control Over the Property**

The determination of custody and control over an object is a fact based inquiry. Doughty v. Insured Lloyds Insurance Co. 576 So.2d 461, 464 (La.1991). "Louisiana courts have generally held that (1) ownership of a thing establishes a rebuttable presumption of custody or 'garde,' and (2) in a case of non-ownership, a defendant may be found to have custody over property when he exercises direction and control of the thing and derives some benefit from it." Coulter v. Texaco, 117 F.3d 909, 913 (5th Cir. 1997); *See also* Doughty v. Insured Lloyds Ins. Co., 576 So.2d 461, 464 (La.1991); Ross v. La Coste de Monterville, 502 So.2d 1026, 1032 (La.1987); Dupree v. City of New Orleans, 765 So.2d 1002, 1009 (La.2000); King v. Louviere, 543 So.2d 1327, 1329 (La.1989); Loescher v. Parr, 324 So.2d 441, 449 (La.1975). The United States Court of Appeals for the Fifth Circuit follows the Louisiana Supreme Court and defines custody to mean supervision and control. Ainsworth v. Shell Offshore, Inc., 829

F.2d 548, 551 (5th Cir.1987); Boutwell v. Chevron U.S.A, Inc., 864 F.2d 406, 409 (5th Cir.1989).

1. Direction and Control

"Although ownership creates the presumption of garde, this presumption is rebuttable by the owner." Doughty, 576 So.2d at 464. Custody is presumed because "the owner of a thing is in a better position than the innocent victim to guard against the unreasonable risks of structural defects in the thing he owns which arise before he transfers possession of it to another." Ross v. La Coste de Monterville, 502 So.2d 1026, 1032. However, the court in Doughty held that the plaintiff did not have custody over the object because "although [plaintiff] was an owner by virtue of community property laws, she was not in a better position than an innocent victim to detect, evaluate or take steps to eliminate an unreasonable risk of harm arising in the [object that caused the injury]". 576 So.2d at 465.

The Plaintiff in this situation was in a far better position to recognize and take steps to eliminate the risk of a fallen plastic bag from the air duct. The Plaintiff stated that he noticed that it was a very windy day and plastic bags were blowing around all over the area, and that although in the past they were secured under wood, Plaintiff took no such steps to secure the plastic bag that caused the injury. (Rec. Doc. No.

46, "Ex. 7", 89-94).  Defendant, however, did not observe the injury and was unaware of the wind, the plastic bags, and of any manner of remedying the situation.  (Rec. Doc. No. 46, "Ex. 7", 103).  Furthermore, Defendant had delegated the duty of housekeeping and maintenance of safe working conditions to a sub contractor.  (Rec. Doc. No. 46, "Ex. 5").

The next issue to address is whether the Defendant had "direction and control" over the object that caused Plaintiff's injuries.  Typically, when injury is caused by a specific thing, that thing is considered "the object" with respect to the issue of custody.  Doughty, 576 So.2d 461 (Defective machinery on property was considered "the object", not the property itself.); Ross, 502 So.2d 1026 (Ladder on landlord's property was considered the object causing injury).  The property on which injury occurred is not considered "the object" unless an inherent defect in the property was the cause of injury.  Dupree, 765 So.2d 1002 (Property was considered "the object" because the cause of injury was a cave-in on the street).

In this situation, the object that caused the injury was a plastic bag that came off of ductwork that Plaintiff was unloading off of a truck.  There is no evidence of any defect in the property that caused Plaintiff's injury.

A party has control if at the time of the accident, the party has sole right of direction and control over the object that caused the accident. Id. at 1010.  In making a determination as to whether a person direction and control over an object, the court will consider whether the person owns the object, whether the person visited the location of the object, whether the person utilized the object, and whether the person was charged with maintaining the object. Doughty, 576 So.2d at 464.  The court in Doughty held that the plaintiff did not have custody over a piece of defective machinery because the plaintiff never visited the location of the machinery, she did not purchase, install, or operate the machinery, and plaintiff's only relationship to the machinery was that it was community property belonging to her and her husband. Id. Similarly, Defendant in this case did not have representatives or agents visiting the site of the injury.  Defendant did not purchase, provide, or deliver the ductwork, nor did Defendant request that Plaintiff unload the ductwork.  Defendant's sole relationship with the object that caused the injury, the piece of plastic, was that it was the owner of the property on which the object  caused injury.

In sum, Defendant did not have control and direction over the object that caused Plaintiff's injuries because Plaintiff was in a much better position than Defendant to recognize and lessen

the risk posed by the plastic bags.  Additionally, lack of direction and control is demonstrated by the fact that Defendant did not provide or deliver the ductwork, nor did he instruct Plaintiff to unload it.  Therefore, there was no control and direction over the object that caused Plaintiff's injury.

Plaintiff argues that although Defendant did not have complete and exclusive control over the area, Defendant did have partial control.  "The garde of a thing can sometimes be divided between two persons, that is, between the guardian of the conduct of the object who is presumed to be responsible for damage caused by its behavior and the guardian of its structure who is responsible for damage caused by the object's defects."  King, 543 So.2d 1327, 1329 (citing Ross, 502 So.2d at 1032).  Based upon this doctrine, the court in Ross concluded that "an owner of a thing who transfers its possession, but not its ownership to another, continues to have the garde of its structure and is obliged to protect others from damage caused by structural defects arising before the transfer."  502 So.2d at 1032.

Plaintiff claims that Defendant had partial control over the property.  The aforementioned doctrine does not apply because first, it applies to the object that caused the injury, which in this case is the plastic bag.  The plastic bag was never owned by Defendant, and thus Defendant never had an obligation to protect

Plaintiff from injury caused by it.  Second, even if is the matter in question regarding partial control, there was no structural defect that arose before the transfer that caused injury to Plaintiff.  Plaintiff's injuries were sustained by a defect that arose following the transfer.  Defendant therefore did not retain any partial control over the object or the property resulting in liability for Plaintiff's injuries.

2.  Benefit

The next issue is whether Defendant received any benefit from the object that injured Plaintiff.  To find that a party benefitted from the object that caused injury, the court requires that the benefit be substantial.  Doughty, 576 So.2d at 464; Dupree, 765 So.2d at 1012.[4]  Defendant received minimal benefit from the air duct and its plastic packaging.  Defendant benefitted from the contract with Broadmoor for use of the property, but the actual benefit retained from the subcontractor's ductwork materials are minor.  In Doughty, the court held that a piece of machinery in the party's husband's mill did not constitute a substantial benefit to her, even though she was the owner of the machinery by virtue of the community

---

[4] The United States Court of Appeals for the Fifth Circuit generally follows the Louisiana Supreme Court's test for custody by looking at control and direction over the object causing the injury.  However, the Louisiana Supreme Court will also consistently look for benefit as a second prong to finding custody, whereas the Fifth Circuit does not address the "benefit" prong of the test.

property regime.  This is because although she received some benefit from the overall income of her husband's mill, the machinery was not "the main piece of equipment which sustained the profitability of the business … thus although she received a benefit from the ownership, the benefit was not substantial." Doughty, 576 So.2d 464.  Similarly, Defendant's main source of income was in the ownership of the property, and not the subsequent activities that took place on the property.  Thus, Defendant received no or very little benefit from the object that caused Plaintiff's injury.

Under the circumstances surrounding Plaintiff's injury, Defendant did not have care, custody, or control over the object. Defendant did not have direction or control over the object that caused plaintiff's injury, nor did Defendant retain any substantial benefit from the object.  Therefore, the Court finds that there was no custody over the object.

**D. Plaintiff's Other Claims**

1. Defendant exercised control by rushing subcontractor's work

Plaintiff claims that Defendant rushed the subcontractor's work, demonstrating control over the work site.  No evidence is presented in support of Plaintiff's claim that Defendant was rushing the work toward completion.

15

In Coulter, the court states that a contract between the defendant and his subcontractor giving control and responsibility of the work site and machinery to the subcontractor "establishes a strong presumption that [the machinery] was in the legal custody of [the subcontractor], not [the defendant]." 117 F.3d at 914. "The total absence of evidence that [the defendant] exercised actual control over the ongoing implementation of [subcontractor's defective machinery] makes this presumption conclusive." Id.

Plaintiff did not allege in the complaint that Defendant rushed the subcontractor.. (Rec. Doc. No. 1-1, Plaintiff's First Amended Complaint). The issue was not addressed until Plaintiff filed his Response to Defendant's Motion for Summary Judgment. (Rec. Doc. No. 51). In this Response, Plaintiff does not cite any evidence alleging that the subcontractor was rushed, such as letters, depositions, contracts, or anything else that might suggest that Defendant was setting deadlines or rushing the sub-contractor's work. Even if such evidence existed, it is not sufficient to support a finding of custody and control, or of operation control over the job site. The Court therefore finds that due to the complete lack of evidence of regarding the allegation of the Defendant rushing the subcontractor, there is no genuine issue of material fact in dispute.

2.  <u>Lessor – Lessee Relationship</u>

Plaintiff claims that Defendant had a duty to maintain the premises as a lessor.  There is no lease agreement in this situation, so the argument does not apply.  According to Art. 2668. of the Louisiana Civil Code, a "lease is a synallagmatic contract by which one party, the lessor, binds himself to give to the other party, the lessee, the use and enjoyment of a thing for a term in exchange for a rent that the lessee binds himself to pay."  There is no lease in this situation.  The contract specifically states that "The purpose of this yard utilization agreement ... is for BP and [Defendant] to memorialize the Commercial Agreement concluded between the parties to fabricate the BP Program Scope and Work thereunder.  [Defendant] agrees to dedicate and BP agrees to utilize the Dedicated Resources of [Defendant's] Amelia, Louisiana, Fabrication Yard on a continuous and exclusive basis for an indefinite period of time known as the Exclusive Period to fabricate the BP Program Scope and Work thereunder."  (Rec. Doc. No. 46, Ex. "1"). . (Rec. Doc. No. 46, Ex. "1").  There is no term listed, and the purpose of the contract is not to lease the property, but rather "to memorialize the commercial agreement concluded between the parties to fabricate the BP Program Scope and Work thereunder." (Rec. Doc. No. 46, Ex. "1").  Thus, Plaintiff's argument fails.

**E.  Conclusion**

There is no issue of fact foreclosing the Court's ability to grant summary judgment in favor of the Defendant. For the foregoing reasons, Defendant's Motion for Summary Judgment is **GRANTED**.[5]

New Orleans, Louisiana, this 19th day of July, 2006.

IVAN L.R. LEMELLE
UNITED STATES DISTRICT JUDGE

---

[5] The Court's opinion does not foreclose Plaintiff's recovery in state tribunals under applicable state worker's compensation laws.